UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OAKLAND FAMILY RESTAURANTS, INC.,
A Michigan corporation and
LAKE AREA RESTAURANTS, INC.,
a Michigan corporation,

Plaintiffs,

vs.                                                                 Case No._____
                                                                    Hon. _____

AMERICAN DAIRY QUEEN
CORPORATION, a Delaware Corporation,

Defendant.
_____

Arthur J. LeVasseur (P29394)
Troy C. Otto (P67448)
FISCHER, FRANKLIN & FORD
Attorneys for Plaintiffs
24725 W. 12 Mile Road, Suite 230
Southfield, MI 48034
(313) 962-5210
levasseur@fischerfranklin.com
otto@fischerfranklin.com
_____

**COMPLAINT AND JURY DEMAND**

NOW COMES Plaintiffs, Oakland Family Restaurants, Inc. and Lake Area Restaurants, Inc., by and through their attorneys Fischer, Franklin & Ford and for their Complaint state as follows:

1

1. Plaintiff Oakland Family Restaurants, Inc. ("OFR") is a Michigan corporation with its principle place of business in the city of St. Clair Shores, Macomb County, Michigan and is, therefore, a citizen of Michigan.

2. Plaintiff Lake Area Restaurants, Inc. ("LAR") is a Michigan corporation with its principle place of business in the city of St. Clair Shores, Macomb County, Michigan and is, therefore, a citizen of Michigan.

3. Plaintiffs each own and operate Dairy Queen® stores in Oakland County, MI.

4. Defendant American Dairy Queen Corporation (hereinafter "ADQ") is a Delaware corporation with its principle place of business in Minneapolis, Minnesota and, therefore, is not a citizen of Michigan.

5. Jurisdiction is proper under 28 USC § 1332 as there exists complete diversity of citizenship and the amount in controversy exceeds $75,000.

6. Venue is proper pursuant to 28 USC § 1391 as a substantial part of the claim occurred and all of the Dairy Queen stores that are the subject of this action are located in Oakland County, Michigan.

7. The laws of the State of Michigan govern this matter.

8. On May 19, 1965 Defendant ADQ's predecessor in interest entered into what is entitled a "Store Operator Franchise Agreement" (the "1965 Agreement") with Nazar Malkasian under which the latter obtained the right to operate an unlimited number of retail outlets using the Dairy Queen tradename and marks within a

designated territory within Oakland County, Michigan. A copy of the 1965 Agreement is attached as Exhibit A.

9. The interest of Nazar Malkasian as franchisee under the 1965 Agreement was subsequently assigned to Richard Neaves and Alice Neaves.

10. On October 9, 1990 an addendum to the 1965 Agreement was executed which enlarged the designated territory to include large parts of southwestern and western Oakland County. A copy of the 1990 Addendum is attached as Exhibit B.

11. The interest of the Neaves as franchisees under the 1965 Agreement, as modified by the 1990 Addendum, was subsequently assigned to an entity called Dairy Queen of Union Lake, Inc., which was owned and operated by Sanford Arnoff and Jerry Arnoff.

12. On August 1, 1996, Defendant's then Director of Franchise Services & Contracts sent a letter ("the 1996 Letter") to the Arnoffs clarifying the terms of the 1965 Agreement with respect to the development and sale of additional Dairy Queen stores within the designated territory. A copy of the 1996 letter is attached as Exhibit C.

13. The 1996 letter stated, *inter alia*, that under the 1965 Agreement the franchisee had the right to establish new stores anywhere within the designated territory, the right to sell any store that the franchisee might develop within its territory, that in the event of such a sale the purchaser would acquire rights under the 1965

Agreement as it pertains to the store location and any part of the designated territory that was being sold with that store, with the balance of the territory and rights under the 1965 Agreement remaining with the seller. The letter further stated that an addendum to the agreement for both stores must be done simply "to clarify the territory that is attached to each store."

14. On February 24, 2000 Defendant ADQ and Dairy Queen of Union Lake, Inc. executed an addendum to the 1965 Agreement. A copy of the 2000 Addendum is attached as Exhibit D.

15. The 2000 Addendum amended the 1965 Agreement to provide that two stores located in Farmington Hills, Michigan and a portion of the territory identified in the 1965 Agreement were being transferred from the then current franchisee, Dairy Queen of Union Lake, Inc., to a company called Southwest Oakland Development Partnership and the remaining store, located in Union Lake, along with the balance of the territory identified in the 1965 Agreement was being retained by Dairy Queen of Union Lake, Inc.

16. Section 4 of the 2000 Addendum expressly provided that a sale or assignment of any part of the Amended Territory could be made if such sale or assignment were made in connection with the sale or assignment of franchise rights to an existing Dairy Queen store that the franchisee had developed and operated within the Amended Territory for a period of not less than six (6) months.

17. Following the assignment of the two Farmington Hills stores and a portion of the designated territory pursuant to the 2000 Addendum, both the assignor and the assignee operated their respective Dairy Queen stores pursuant to the terms of the 1965 Agreement, as amended, within their respective designated territories and paid fees to Defendant only as provided for in the 1965 Agreement.

18. Plaintiff OFR is a successor in interest to the 1965 Agreement, as amended, with respect to the Farmington Hills stores and territory transferred pursuant to the 2000 Addendum.

19. Plaintiff OFR has spent substantial sums to develop, equip, open and operate additional Dairy Queen stores within its designated territory.

20. Plaintiff OFR currently owns and operates seven (7) Dairy Queen stores pursuant to the 1965 Agreement, as amended.

21. On November 5, 2005 Dairy Queen of Union Lake, Inc. assigned to Plaintiff LAR its remaining territory and rights under the 1965 Agreement, as amended, in connection with the sale of the Union Lake Dairy Queen store.

22. Since 2005 Plaintiff LAR has spent substantial sums to develop, equip, open and operate additional stores within its designated territory pursuant to its rights as under the 1965 Agreement, as amended, and as clarified by the 1996 Letter.

23. Since acquiring the rights of Dairy Queen of Union Lake, Inc. Plaintiff LAR has operated all of its Dairy Queen stores pursuant to the 1965 Agreement, as amended, and paid fees to Defendant only as provided for in the 1965 Agreement.

24. Plaintiff LAR currently owns and operates five (5) Dairy Queen stores pursuant to the 1965 Agreement, as amended.

25. Under the 1965 Agreement each Plaintiff has the right to develop additional Dairy Queen stores within its designated territory and a right to do so without any obligation to pay an initial franchisee fee or other lump sum payment for each additional store, each of which is a valuable contract right.

26. Each Plaintiff's right to sell or assign a store within its designated territory that it developed and has operated for at least six months is a valuable contract right.

27. Each Plaintiff's right to sell or assign a part of its designated territory and franchise rights under the 1965 Agreement in connection with the sale of an existing Dairy Queen store is a valuable contract right.

28. Each Plaintiff pays fees to Defendant pursuant to the terms of the 1965 Agreement as amended.

29. Each Plaintiff purchases ice cream mix procured from suppliers approved by Defendant and utilizes equipment procured from approved equipment suppliers to produce soft serve ice cream and other products sold at their respective existing Dairy Queen stores.

30. The 1965 Agreement requires Plaintiffs to pay Defendant a fixed fee of 29 cents per gallon of ice cream mix utilized for products sold at their respective Dairy Queen stores and such fee is not subject to any increase based on gross sales, inflation or any other factor.

31. Each Plaintiff's continuing right under the 1965 Agreement to use the Dairy Queen tradename and marks at their respective stores in connection with the sale of soft serve ice cream and other products in exchange for a fixed franchise fee of 29 cents per gallon of ice cream mix is a valuable contract right.

32. The 1965 Agreement does not require Plaintiffs to pay advertising fees to Defendant or make contributions to an advertising fund operated by Defendant or any third party.

33. The right to use the Dairy Queen tradename and marks under the 1965 Agreement without a requirement to pay advertising fees or contributions to an advertising fund is a valuable contract right.

34. Plaintiffs each paid substantial sums to acquire rights under the 1965 Agreement with respect to their respective stores and designated territories, including but not limited to the right to open and operate an unlimited number of additional Dairy Queen stores within their territory, the right to sell any store they developed within their territory as long as they operated the store being sold for at least six months prior to a sale, the right to sell a portion of their designated territory in connection

with the sale of an existing store and the right to transfer to the purchaser the same rights Plaintiffs each have under the 1965 Agreement with respect to the store or stores and territory being sold or assigned to that purchaser.

35. Plaintiffs each relied upon the terms of the 1965 Agreement, the amendments to that Agreement from time to time and the statements made by Defendant in the 1996 Letter clarifying the meaning of the 1965 Agreement and spent substantial sums to construct new Dairy Queen stores within their respective territories, to purchase approved equipment and operate these additional stores with the reasonable understanding and belief that if they sold or assigned any Dairy Queen store they had developed and operated for at least six months, the purchaser would have the same valuable contract rights under the 1965 Agreement, only limited to the territory transferred with the store being sold.

36. Each additional store developed by Plaintiff OFR within its designated territory has been operated by Plaintiff OFR for at least six months.

37. Each additional store developed by Plaintiff LAR within its designated territory has been operated by Plaintiff LAR for at least six months.

38. In 2021 Plaintiffs began to explore the possibility of selling or assigning one or more of the twelve Dairy Queen stores they collectively own and operate to individuals who have extensive experience with the Dairy Queen system and have actively managed the day-to-day operations of one or more of the existing 12 Dairy

Queen stores collectively owned by Plaintiffs, or to entities under those individuals' control.

39. Plaintiffs informed Defendant of their plans to sell or assign one or more of their existing Dairy Queen stores along with portions of their respective territories in connection with each sale or assignment of a store.

40. Defendant has informed Plaintiffs that Defendant will not recognize the assignment of rights under the 1965 Agreement, as amended, in connection with the sale or assignment of a Dairy Queen store within Plaintiffs' respective designated territories, contrary to the rights each Plaintiff acquired under the 1965 Agreement, as amended, when they first purchased a Dairy Queen store and designated territory and contrary to Defendant's statements in the 1996 Letter confirming that an assignee would have the same rights under the 1965 Agreement as the assignor, but limited to the territory being assigned in connection with the sale of the store.

41. Defendant has informed Plaintiffs that if one or more of Plaintiffs' Dairy Queen stores are sold or assigned, the 1965 Agreement will be terminated with respect to that store/stores and territory and that the buyer/assignee must execute an entirely new contract with Defendant that contains materially different terms than provided for under the 1965 Agreement, as amended.

## COUNT I – BREACH OF CONTRACT

42. Plaintiffs incorporate herein by reference hereto each of their allegations contained in Paragraphs 1 through 41 of this Complaint, the same as if the allegations were fully set forth herein.

43. Plaintiff OFR and Defendant are each parties to the 1965 Agreement, as amended, with respect to Plaintiff OFR's designated territory.

44. Plaintiff LAR and Defendant are each parties to the 1965 Agreement, as amended, with respect to Plaintiff LAR's designated territory.

45. By the express terms of the 1965 Agreement, as amended, each Plaintiff's rights under the 1965 Agreement are assignable to a purchaser of an existing Dairy Queen store within the selling Plaintiff's designated territory, with the purchaser receiving the same rights and obligations as the Seller has under the 1965 Agreement with respect to that store and any designated territory being assigned in connection with the sale of that store.

46. A franchise agreement in the State of Michigan contains an implied covenant of good faith and fair dealing.

47. Defendant's refusal to recognize the assignment of rights under the 1965 Agreement, as amended, to a purchaser or assignee of one or more of the Dairy

Queen stores developed by each Plaintiff within their respective territories, and its demand that any such sale be conditioned upon the termination of the 1965 Agreement with respect to that store and designated territory and also conditioned upon execution of a new franchise agreement containing material different terms and conditions from the 1965 Agreement, as amended, constitutes a breach or an anticipatory breach of the 1965 Agreement, as amended.

48. Defendants wrongful repudiation of its obligation to recognize the assignment of rights under the 1965 Agreement to a purchaser of a Dairy Queen store within Plaintiffs' respective territories and its threat to terminate the 1965 Agreement with respect to any such store and portion of the designated territory assigned in connection with the sale of such store is done in bad faith and intended to unlawfully deprive Plaintiffs of valuable rights each holds under the 1965 Agreement, as amended, solely for the financial benefit of Defendant.

49. Defendant's breach or anticipatory breach of the 1965 Agreement, as amended, has caused each Plaintiff damages in excess of $75,000.00.

50. Defendant's breach has caused damage to Plaintiffs in that each Plaintiff's interest in a Dairy Queen store and its associated territory operating under the terms of the 1965 Agreement, as amended, is worth substantially more than it would have if the same store were to operate under the terms and conditions contained in the form of

contract Defendant wishes to impose upon a buyer of Plaintiffs' respective existing Dairy Queen stores.

**WHEREFORE**, Plaintiffs request judgment against Defendant in an amount to which they are found to be entitled in excess of $75,000.00, plus statutory costs and attorneys' fees.

## COUNT II-PROMISSORY ESTOPPEL

51. Plaintiffs incorporate herein by reference hereto each of their allegations contained in Paragraphs 1 through 50 of this Complaint, the same as if the allegations were fully set forth herein.

52. Plaintiff OFR and Defendant are each parties to the 1965 Agreement, as amended, with respect to Plaintiff OFR's designated territory.

53. Plaintiff LAR and Defendant are each parties to the 1965 Agreement, as amended, with respect to Plaintiff LAR's designated territory.

54. By the express terms of the 1965 Agreement, as amended, each Plaintiff's rights under the 1965 Agreement are assignable to a purchaser of an existing Dairy Queen store within the selling Plaintiff's designated territory, with the purchaser receiving the same rights and obligations as the Seller has under the 1965 Agreement with respect to that store and any designated territory being assigned in connection with the sale of that store.

55. By its 1996 Letter Defendant promised that if a Dairy Queen store developed within the designated territory were sold or assigned, the purchaser would acquire the same rights and obligations as the seller had under the 1965 Agreement with respect to that store and any territory being assigned in connection with the sale of that store, while the seller would continue to operate pursuant to and have the rights and obligations under the 1965 Agreement with respect to the portion of the designated territory being retained by the seller, and that the only requirement would be for each party to execute an amendment identifying the designated territory being sold and that being retained.

56. Defendant knew or should have reasonably expected that the promises it made in the 1996 Letter would be relied upon by prospective purchasers as an inducement to purchasing a store operating under the 1965 Agreement and a part of the seller's designated territory under the 1965 Agreement.

57. Defendant knew or should have reasonably expected that the promises made in the 1996 Letter would be relied upon as an inducement to construct and develop additional stores within the territory covered by the 1965 Agreement.

58. Each Plaintiff, in fact, relied upon the promises made in Defendant's 1996 Letter regarding the rights a purchaser of a store and any part of the designated territory would acquire, and based upon such reliance each spent substantial sums to

purchase their initial stores and a portion of the designated territory covered by the 1965 Agreement, as amended.

59. Each Plaintiff, in fact, relied upon the promises made in Defendant's 1996 Letter and based on such reliance elected to spend substantial sums of money to construct, equip, develop and operate additional Dairy Queen stores within their respective territories under the 1965 Agreement.

60. Each Plaintiff's reliance upon the promises made in the 1996 Letter is of such a nature that under the circumstances that it would be a manifest injustice if the promises made in the 1996 Letter were not enforced.

   **WHEREFORE**, Plaintiffs request the Court enter an order enforcing the promises made by Defendant in its 1996 Letter and award Plaintiffs' statutory costs and attorneys' fees.

## COUNT III – DECLARATORY JUDGMENT

61. Plaintiffs incorporate herein by reference hereto each of their allegations contained in Paragraphs 1 through 60 of this Complaint, the same as if the allegations were fully set forth herein.

62. Pursuant to 28 USC § 2201 and Fed. R. Civ. P. 57 this court has the authority to declare the rights and other legal relations of any interested party seeking such declaration.

**WHEREFORE**, Plaintiffs respectfully request this Honorable Court enter an Order that:

a. declares the rights and other relations of the parties to this action;

b. declares that Defendant has no right to unilaterally terminate the 1965 Agreement, as amended, with respect to a store and territory being sold or assigned by Plaintiffs, or to impose entirely new obligations upon Plaintiffs or their respective assignees;

c. declares that the 1965 Agreement, as amended, expressly provides that Plaintiff's rights under the 1965 Agreement, as amended, may be sold or assigned in connection with the sale of an existing Dairy Queen store within the selling Plaintiff's territory, provided only that if it is an additional store it was developed by the selling Plaintiff and has been operated for at least six months by the selling Plaintiff;

d. Defendant's wrongful actions constitute a violation of the Michigan Franchise Investment Law MCL 445.1501 et seq. including but not limited to MCL 445.1527;

e. permits a trial by jury of any fact issues in this case; and

f. awards Plaintiffs all other relief this Court deems appropriate.

DATED:     October 28, 2021

                            FISCHER, FRANKLIN & FORD

                            /s/ *Arthur J. LeVasseur*
                            Arthur J. LeVasseur (P29394)
                            Troy C. Otto (P67448)
                            Attorneys for Plaintiffs
                            24725 W. Twelve Mile Road, Suite 230
                            Southfield, MI  48034
                            (313) 962-5210
                            levasseur@fischerfranklin.com

## **JURY DEMAND**

Plaintiffs, through their attorneys, Fischer, Franklin & Ford, hereby demand a trial by jury in the above-captioned cause.

                            Respectfully submitted,

DATED:     October 28, 2021

                            FISCHER, FRANKLIN & FORD

                            /s/ *Arthur J. LeVasseur*
                            Arthur J. LeVasseur (P29394)
                            Troy C. Otto (P67448)
                            Attorneys for Plaintiffs
                            24725 W. Twelve Mile Road, Suite 230
                            Southfield, MI  48034
                            (313) 962-5210